UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:23-CR-00214 |
| | ) | |
| | ) | (BRANN, C.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TYSHEEM DUNLAP, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**
*Defendant's Motion for Bail, Doc. 25*

## I.      BACKGROUND

On August 10, 2023, Tysheem Dunlap ("Defendant") was charged by federal indictment with the sale of drugs that resulted in the death of one person and the serious injury of two others.[1] The events leading to the death and injury charges occurred on August 20, 2022. He is also indicted on two unrelated drug sale charges, happening on September 17, 2022, and October 8, 2022, all in Columbia County, Pennsylvania. Defendant was originally charged under state law in Columbia County, Pennsylvania in December of 2022, apparently based on the same facts. The state cases are still pending, but he has posted bail on those charges.[2]

---

[1] The indictment charges three counts of distribution of fentanyl resulting in death or serious bodily injury, and two counts of distribution of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. 1).

[2] *Commonwealth v. Dunlap*, No. CP-19-CR-0000962-2022 (C.C.P. Columbia Cnty.); *Commonwealth v. Dunlap*, No. CP-19-CR-0000963-2022 (C.C.P. Columbia Cnty.); and *Commonwealth v. Dunlap*, No. CP-19-CR-0000346-2023 (Columbia Cnty.) available at https://ujsportal.pacourts.us/CaseSearch (last accessed April 9, 2024).

Defendant appeared in federal court for the first time on August 15, 2023. He pled not guilty and was detained but reserved the right to seek bail later. His initial detention hearing was continued twice and then cancelled at his request. (Doc. 20). On January 22, 2024, Defendant filed a motion for bail, and a brief in support in which he requests a bail hearing. (Docs. 25, 26). On February 5, 2024, the Government filed a brief in opposition. (Doc. 29). A bail hearing was held on February 28, 2024. A decision on bail was deferred pending receipt of additional documents and exhibits. (Doc. 40). Those documents have been received and the matter is ready to resolve.

## II.     LEGAL STANDARD

The Eighth Amendment to the United States Constitution states that: "Excessive bail shall not be required . . . ."[3]  The right to bail under the Eighth Amendment is not absolute one, and Congress may restrict the category of cases in which bail will be allowed.

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, ("the BRA"), governs the release and detention of pretrial defendants.  For defendants charged with certain enumerated offenses, the BRA sets a presumption in favor of detention.[4] Included among the enumerated offenses is "an offense for which a maximum term of

---

[3] U.S. Const. amend. VIII.
[4] 18 U.S.C. § 3142(e)(3).

imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or chapter 705 of title 46."[5] An indictment charging a defendant with such an offense is enough "to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)."[6]

The defendant bears the burden of rebutting this presumption, and may do so by producing some credible evidence that he will appear and will not present a threat to the community.[7] The amount of evidence required to rebut this presumption is not high.[8] If the defendant can meet this burden of production, the Government then bears the ultimate burden of persuasion.[9] The Government may meet its burden by: (1) demonstrating by clear and convincing evidence that the defendant is a danger to the community; or (2) demonstrating by a preponderance of the evidence that the defendant is a flight risk.[10]

In determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of the community, the Court must

---

[5] 18 U.S.C. § 3142(e)(3)(A).

[6] *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

[7] *United States v. Carbone*, 793 F.2d 448, 560 (3d Cir. 1986).

[8] *Id.*

[9] *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986).

[10] *Id.* at 114 ("The judicial officer need only be convinced of dangerousness by clear and convincing evidence."); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) ("the government's burden in demonstrating risk of flight is the preponderance of the evidence standard.").

weigh the evidence based on the four factors set forth in 18 U.S.C. § 3142(g). Those four factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.[11]

III.    **SPECIFIC FINDINGS OF FACT**

In making this decision we have considered the following items:

(1)    The indictment (Doc. 1);

(2)    The August 14, 2023 Pretrial Services Report;

(3)    The August 16, 2023 Updated Pretrial Services Report;

(4)    The February 16, 2024 Pretrial Services Third Party Custodian Report;

(5)    The publicly available dockets from the Columbia County Court listed in footnote 2;

(6)    Defendant's Motion for Bail (Doc. 25), and Brief in Support (Doc. 26);

(7)    The Government's Brief in Opposition (Doc. 29) and Sealed Exhibit (Doc. 31);

(8)    The testimony from the February 28, 2022, detention hearing;

(9)    The arguments of counsel at the initial appearance and detention hearing; and

(10)    The documents listed on the Hearing Exhibit List (Doc. 41).

From this record we make the following findings of fact:

(1)    Defendant is currently twenty-six years old.

---

[11] 18 U.S.C. § 3142(g).

(2)     Defendant is single, has never been married and has no children.

(3)     Defendant's criminal history includes only two misdemeanor convictions, both in South Carolina. One for marijuana possession in 2015 at age 18, and a driving while operating privileges suspended or revoked in 2019 at age 22. He had at least three minor traffic citations while living in South Carolina. Those fines have all been paid.

(4)     Defendant has no history of violence or use of firearms.

(5)     Defendant has a high school education and at least one year of college.

(6)     Defendant had steady employment before his arrest. While living in Bloomsburg he worked at a Vape Shop for two years and before that at Applebee's and Denny's.

(7)     Defendant's girlfriend, Nicollette Skinner, a proposed third-party custodian, has been in an "off and on" relationship with Defendant for five years. She lives and works in Bloomsburg, Pennsylvania. She is employed and works a total of six days per week, for two different employers. Defendant and Ms. Skinner did not live together before his arrest. Ms. Skinner has one misdemeanor conviction for retail theft four years ago. Ms. Skinner was scheduled for a brief inpatient surgery in late March. Ms. Skinner has a valid driver's license and a Pennsylvania concealed carry permit but does not own any guns.

(8)     Defendant's mother, Jennifer Dunlap-Biernacki (also a proposed third-party custodian), resides in Summerville, South Carolina with her husband, their two children and one grandson. Defendant lived with Mrs. Dunlap-Biernacki in South Carolina from 2016 to 2020 until he moved back to Philadelphia to live with his grandmother.

(9)     Mrs. Dunlap-Biernacki and her husband do not have criminal records.

(10)    Mrs. Dunlap-Biernacki works for Homeland Security as a Transportation Security Administration Supervisor at the Charleston International Airport. Her husband used to work for Homeland Security but now drives for United Parcel Service.

(11)    Mrs. Dunlap-Biernacki testified that she was willing to have Defendant live with her and that she would "arrange for transportation of Tysheem

Dunlap to Williamsport for any court appearances or meetings with his attorney, Gerald A. Lord."

(12)   Mrs. Dunlap-Biernacki testified that she understood the responsibilities of a third-party custodian and was willing to take on that task. She was a credible witness. Her testimony and affidavit are found to be persuasive.

## IV.   DISCUSSION

### A.   RISK OF DANGER TO THE COMMUNITY

To rebut the presumption of detention, Defendant relies primarily on his relatively minor criminal history, and his proposed release plan. We observe that a Defendant's burden of providing evidence to rebut the presumption of detention is not a high one. Defendant asserts that he has a relatively minor criminal history with no prior convictions for drug trafficking, and only one prior conviction for possession of a small amount of marijuana. He argues that imposing certain additional conditions of release (including but not limited to appointing a third-party custodian, imposing a curfew, and location monitoring) will reasonably assure the safety of the community.

In response the Government argues that it has shown by clear and convincing evidence that no reasonable set of conditions could ensure the safety of the community.

Beginning with the nature and circumstances of the offense charged, the Government asserts Defendant is charged with the distribution of illegal drugs that

contained fentanyl. The Government argues, relying on *United States v. Roman-Monroy*, 608 F.Supp.2d 86 (D.D.C. 2009), that all cases involving serious drug distribution implicate the safety of the community. The "serious drug distribution" at issue in *Roman-Monroy*, however, was considerably more significant than what occurred in this case. In *Roman-Monroy*, the defendant was charged with distributing more than 1,000 grams of crack cocaine, had two other drug distribution convictions, and a bail jumping conviction. Defendant is charged with selling $50 worth of an illegal drug that the purchasers thought was cocaine on at least three occasions.[12]

Next, the Government argues that the weight of the evidence supporting its indictment is significant. It argues that:

> [Defendant] is identified circumstantially through footage of him at the apartment parking lot and making a purchase at the Wine and Spirits store; as well as directly by J.M. and through the paper trail left by his SnapChat records. There is no doubt that he is the person who delivered the fatal narcotics on August 20, 2022.

(Doc. 29, p. 9). The Government proffers that one of the victims, J.M., contacted Defendant via SnapChat to purchase cocaine, and then paid Defendant $50 for three (3) bags. Fentanyl residue was found on a rolled $20 bill, and fentanyl and cocaine residue was found inside four glassine bags. The Government relies on a forensic

---

[12] "Records obtained from this phone number show that the user had been receiving multiple payments of $50 on a cash app the night that J.M., too, had purchased drugs for $50 from Sheem." (Doc. 29, p. 3). The brief does not define "multiple."

report concluding that the combination of multiple drugs in users' systems caused two individuals to suffer serious bodily injury, and one to suffer death.

Regarding the history and characteristics of Defendant, the Government argues it has evidence that Defendant is a "habitual" drug dealer operating in the Bloomsburg, Pennsylvania area. It proffers that Defendant used a "cash" app in which Defendant received multiple incoming payments for $50. (Doc. 29, p. 10). It infers that, because this is the same amount paid by J.M., these other $50 payments were also drug transactions. It also reports that it has evidence of two drug deliveries that occurred after the August 20, 2022 incident (one in September and one in October). It argues that the nature and character of Defendant's conduct suggests that he is not merely an opportunistic criminal but is an established drug dealer whose business model is so well-established that he takes payment by phone.

Last, regarding the nature and seriousness of the danger to the community, the Government emphasizes that drug dealing represents a danger to the community.

Although we agree with the Government that if Defendant continues to sell drugs he poses a risk to the community, we are not persuaded that this cannot be prevented by imposing certain conditions. First, Defendant's mother is a reliable and appropriate third-party custodian. Under this proposed release plan, Defendant would reside with his mother, her husband, and other members of his family in South Carolina. Although Defendant was convicted of possession of marijuana while living

with his mother, he reports that he would have no trouble abstaining from marijuana use if released and under the conditions of release would be subject to regular drug testing. Nothing in this record suggests Defendant has sold drugs while residing with his mother. Conditions requiring that Defendant submit to regular drug testing, abide by a curfew, and submit to any location monitoring as directed by pretrial services, coupled with relocating Defendant to South Carolina (far away from his alleged customers and suppliers) to live in a stable home with his mother (a TSA supervisor) will reasonably ensure the safety of the community. Therefore, based on the relevant factors, we find that the Government has not established by clear and convincing evidence that no combination of conditions can reasonably ensure the safety of the community if Defendant is released on bail pending trial.

### B.    RISK OF FLIGHT

Under the relevant standards discussed above, we find that Defendant also offers sufficient credible evidence to rebut the presumption as to risk of flight. Defendant argues he has a relatively minor criminal history, and no history of failure to appear in Court.[13] He offered two potential third-party custodians, one of whom

---

[13] As far as his drug related history, Defendant was convicted of possession of marijuana at age 18 while living with his mother in South Carolina. A bench warrant was issued for failure to pay fines associated with this conviction. He was also charged and convicted of several traffic violations, including driving on a suspended or revoked license in 2019.

(his mother) is appropriate and has the means to arrange transportation for Defendant to Pennsylvania as necessary.

With Defendant having met this initial burden of production, we turn to the Government's argument. The Government argues that Defendant faces significant penalties (if convicted) and reiterates that its case against Defendant is strong. We are not persuaded, however, that there are no conditions that can reasonably assure Defendant's appearance. Defendant has proposed that his mother (Mrs. Dunlap-Biernacki), a TSA supervisor, serve as a third-party custodian. Moreover, Mrs. Dunlap-Biernacki testified credibly that she understands her responsibilities as a third-party custodian and will arrange for Defendant's transportation to Pennsylvania to meet with his lawyer and for Court appearances. Therefore, based on the relevant factors, we find that the Government has not established by a preponderance of the evidence that no combination of conditions can reasonably assure Defendant's appearance if he is released on bail pending trial.

## V.    CONCLUSION

Therefore, IT IS HEREBY ORDERED that:

(1)  Defendant, Tysheem Dunlap, and his mother, Jennifer Dunlap-Biernacki must both execute completed AO 199A, B, and C forms and provide the originals to the Court for approval and filing. The Court will provide the unsigned forms to both Defense Counsel and the Assistant United States Attorney for review.

(2)   Defense counsel must provide a release plan for Defendant's immediate travel from his place of confinement to his mother's home in Summerville, South Carolina.

(3)   The Pre-trial Services Office in the Middle District of Pennsylvania must meet with Defendant and review the terms of his supervised release before he can be released.

(4)   The Pre-trial Services Office in the Middle District of Pennsylvania must also confirm that courtesy supervision by the United States Probation Office for the District of South Carolina is available and would include electronic monitoring.

(5)   **Release can be no earlier than Tuesday, April 16, 2024, at noon**.


Date: April 10, 2024                    BY THE COURT

                                        _s/William I. Arbuckle_
                                        William I. Arbuckle
                                        U.S. Magistrate Judge